IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

CARL CAUDILL,                                    Civil No. 08-6069-HO

                Plaintiff,                       ORDER

        v.

DEVONSHIRE HILLS and PARK
APARTMENTS, et al.,

                            Defendants.


     Plaintiff formerly performed maintenance and security duties at the Devonshire Hills & Park Apartments in exchange for rent. The second amended complaint alleges federal and state law wage claims, and state law claims for breach of contract, unjust enrichment, fraudulent inducement, intentional and reckless infliction of emotional distress and disability discrimination, including retaliation.  Defendants filed a motion for summary judgment on all claims.  Plaintiff filed a motion for partial summary judgment on the issues of whether he was defendants'

employee, and whether he is entitled to compensation for nighttime security shifts.  Plaintiff filed a motion to strike defendants' tardy response to plaintiff's motion for summary judgment, and associated filings.

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Based on the evidence viewed in the light most favorable to defendants, and providing defendants with the benefit of all reasonable inferences, plaintiff was defendants' employee within the meaning of the FLSA and Oregon's wage and hour statutes.[1] Disputed issues of material fact preclude summary judgment on the issue of compensability of "shifts" allegedly worked by plaintiff, and plaintiff's disability discrimination and retaliation claims.  Plaintiff concedes judgment for defendants on his fraudulent inducement claim.  Plaintiff fails to state a claim for unjust enrichment and intentional and reckless infliction of emotional distress.  Therefore, defendants' motion for summary judgment should be granted in part and denied in part, and plaintiff's motion for summary judgment should be

---

[1] The court does not hold that a resident of an apartment who receives rent credit in exchange for providing services to a landlord is always in all circumstances an employee within the meaning of the FLSA and Oregon's wage and hour statutes.

2 - ORDER

granted in part and denied in part.

## Plaintiff's Motion to Strike

While not condoning the untimely filing of documents, plaintiff's motion to strike is denied. The court favors resolution of the issues on the merits. Plaintiff does not demonstrate prejudice from consideration of the filings. The deputy clerk offered plaintiff's counsel the opportunity to continue oral argument on plaintiff's motion for summary judgment in order to permit plaintiff the opportunity to prepare and file reply documents prior to oral argument. Counsel declined the offer and filed reply documents and the motion to strike on the day before the oral argument.

## Undisputed Facts

Devonshire Hills is a 142-unit apartment complex located in Eugene, Oregon. Plaintiff first rented an apartment at Devonshire Hills in 1998. Robert and Gymme Frank own Devonshire Hills as trustees of the Robert and Gymme Frank Revocable Living Trust. David Frank, the son of Robert and Gymme Frank, has been general manger of Devonshire Hills since September 2001. Kris Kahoilua has been the manager of Devonshire Hills since October 2001. Robert and Gymme Frank jointly make business decisions regarding Devonshire Hills. Robert Frank has ultimate, but not exclusive, authority for hiring and firing decisions, subject to input from David Franks and Kahoilua. Robert Frank is

responsible for filing payroll and taxes and sets all salaries and hourly wages.

David Frank was present at the Devonshire Hills property at least 5 days per week until 2004. Since then, David Frank has visited the property once per month on average, staying at least one week, and four or five times per year, for one and a half to three weeks, to substitute for Kahoilua.

In 2000, plaintiff and Devonshire Hills's onsite manager agreed that plaintiff would perform pool maintenance in exchange for rent credit. Plaintiff occasionally paid others to help him with the work. Thereafter, plaintiff received additional rent credit in exchange for additional maintenance and security services. From December 2001 until May 2007, plaintiff received full rent credit in the amount of $645 per month for performing certain duties, including maintaining the pool and spa areas and performing security duties that consisted mainly of walking the property at night. The pool is open mid-May through September. Plaintiff's duties and compensation remained unchanged during the period from December 2001 until May 2007.

Robert Frank knew that plaintiff performed work for Devonshire Hills in exchange for rent credit.

In May 2007, Kahoilua ended the rent-credit arrangement and plaintiff thereafter commenced paying rent for his apartment.

Plaintiff was evicted from his apartment in January 2008.

4 - ORDER

Plaintiff did not report rent credits to the Social Security Administration until after termination of the rent credit arrangement.

Defendants and their managers did not require plaintiff to keep or submit time records and plaintiff did not do so.

The only contemporaneous document bearing upon plaintiff's status with defendants is an undated rental application and agreement containing handwritten notes about rent credits.[2] Def's ex. 4.

Plaintiff suffers from spondylolisthesis and osteoarthritis. Plaintiff has a medical marijuana card for the former condition and receives supplemental security income from the Social Security Administration due to the condition of his spine. Plaintiff's disabled condition would not be readily apparent to a person viewing plaintiff walking down the street.

Devonshire Hills assistant manager Kris Kahoilua was unaware that plaintiff has physical problems, suffers from a disability, or receives SSI. Kahoilua knew that plaintiff holds a medical marijuana card, but not why.

Devonshire Hills general manager David Frank was not aware that plaintiff is disabled.

Devonshire Hills's three full-time maintenance employees are

---

[2]With respect to this fact, plaintiff's stated lack of knowledge is insufficient to create a triable issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

5 - ORDER

not residents of Devonshire Hills and have duties dissimilar to plaintiff's former duties.[3]

After defendants terminated the rent-credit arrangement, one of defendants' maintenance employees took over pool and spa maintenance duties at no increase in compensation. Plaintiff's duties were distributed between Devonshire Hills employees, none of whom are disabled. Devonshire Hills maintained payroll records on employees, but not on plaintiff.

Plaintiff believed defendants terminated the rent-credit arrangement because plaintiff discussed the idea of a salary with apartment manager Kahoilua two months earlier.

Beginning in 2000, plaintiff occupied a Devonshire Hills apartment located at 1588 Oakpatch Road. Beginning in April 2001, plaintiff occupied Devonshire Hills apartment #13, located at 3088 W. 15th Avenue. Beginning in December 2001, plaintiff occupied Devonshire Hills apartment #10A, located at 3088 W. 15th Avenue.

Plaintiff's habitability concerns regarding apartment #10A included mold and lack of access to power panels servicing the apartment following termination of the rent-credit arrangement.

Plaintiff submitted the following objections during the eviction proceeding: apartment #10A is an illegal apartment due

---

[3]With respect to this fact, plaintiff's stated lack of knowledge is insufficient to create a triable issue of fact. Celotex Corp., 477 U.S. at 324.

6 - ORDER

to a failure to obtain a building permit; apartment #10A has no access to utility control panels; plaintiff failed to secure alternative living arrangements prior to the eviction deadline; and apartment #10A has mold on the wall.  Unit #10A was not built to code and had a large amount of mold.[4]

Defendants required plaintiff to keep the fitness area clean on his nighttime rounds.  Kahoilua periodically checked plaintiff's performance of this duty.

Defendants required plaintiff to keep the pool deck and skimmer clear of debris, to maintain the chemical balance of the pool, and to replace out of place pool and patio furniture.

Devonshire Hills provided all supplies necessary for plaintiff to perform his duties.  Devonshire Hills trained plaintiff to maintain the chemical balance and cleanliness of the pool.

Kahoilua stated he had numerous discussions with plaintiff about plaintiff's performance over the final 18 months of the rent-credit arrangement.  Kahoilua stated that plaintiff would improve his performance for a few weeks and then there would be another problem, and this cycle recurred about every two to six weeks.

---

[4] Defendants deny this fact without citation to evidence to rebut plaintiff's supporting evidence.  Defendants fail to create a triable issue as to this fact.  <u>Celotex Corp.</u>, 477 U.S. at 324.

7 - ORDER

Kahoilua terminated the rent-credit arrangement and informed Robert Frank that he had done so.

Various arrangements between plaintiff and Devonshire Hills are memorialized on plaintiff's initial rental agreement. The document indicates that plaintiff receives SSI benefits.

Kahoilua and David Frank knew that plaintiff had a medical marijuana card.

Kahoilua testified that he discharged plaintiff for poor job performance in May 2007. Kahoilua wrote a letter dated July 2, 2007 recommending plaintiff for employment.

Plaintiff became homeless after his eviction.[5]

I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks partial summary judgment on four issues, considered in turn.

A. Was Plaintiff an Employee Under the FLSA?

The parties dispute whether plaintiff was an employee of defendants within the meaning of the FLSA.[6] Whether an individual is an employee within the meaning of the FLSA is a legal determination for the court, but subsidiary disputed issues

---

[5] With respect to this fact, defendants' stated lack of information and belief is insufficient to create a triable issue of fact. Celotex Corp., 477 U.S. at 324.

[6] The FLSA's minimum wage and overtime pay requirements apply to employees employed in an enterprise engaged in commerce. 29 U.S.C. §§ 206(a), 207(a)(1). Defendants apparently stipulated to plaintiff that they constitute an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s)(1). Pl's ex. 14.

of fact must be submitted to the jury.  Bonnette v. California

Health & Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983).

The FLSA provides that the term "employee," with certain

inapplicable exceptions, means any individual employed by an

employer.  29 U.S.C. § 203(e)(1).  "'Employ' includes to suffer

or permit to work."  29 U.S.C. § 203(g).

> Courts have adopted an expansive interpretation of the
> definition[] of . . . "employee" under the FLSA, in
> order to effectuate the broad remedial purposes of the
> Act.  The common law concepts of "employee" and
> "independent contractor" are not conclusive
> determinants of the FLSA's coverage.  Rather, . . .
> employees are those who As a matter of economic reality
> are dependent upon the business to which they render
> service.
>
> The courts have identified a number of factors which
> may be useful in distinguishing employees from
> independent contractors for purposes of social
> legislation such as the FLSA.  Some of those factors
> are: 1) the degree of the alleged employer's right to
> control the manner in which the work is to be
> performed; 2) the alleged employee's opportunity for
> profit or loss depending upon his managerial skill; 3)
> the alleged employee's investment in equipment or
> materials required for his task, or his employment of
> helpers; 4) whether the service rendered requires a
> special skill; 5) the degree of permanence of the
> working relationship; and 6) whether the service
> rendered is an integral part of the alleged employer's
> business.  The presence of any individual factor is not
> dispositive of whether an employee/employer
> relationship exists.  Such a determination depends upon
> the circumstances of the whole activity.

Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th

Cir. 1979) (internal citations and quotations omitted).  The

manner, mode or measurement of compensation is not determinative

of the employment relationship.  United States v. Rosenwasser,

9 - ORDER

323 U.S. 360, 363 (1945).

Defendants cite to a slightly different formulation of these factors utilized by the district court in the <u>Bonnette</u> case to determine whether the state agency defendant was the plaintiffs' joint employer. 704 F.2d at 1470. Defendants further cite to Tenth Circuit authority for the proposition that the right to control work is the most important factor in the determination of whether an employment relationship exists within the meaning of the FLSA. However, the Ninth Circuit emphasized in the <u>Bonnette</u> case that the determination is not mechanical and is based upon the circumstances of the whole activity. <u>Id</u>.

The parties dispute the degree of defendants' right to control plaintiff's work. The court views the evidence in the light most favorable to defendants and resolves reasonable inferences in favor or defendants, as follows. Defendants and plaintiff negotiated the rent-credit arrangement, including the value of rent credit received by plaintiff. Defendants did not supervise or control plaintiff's schedule or working conditions, but merely specified the results they wanted, such as chemically-balanced water, and plaintiff decided when and how to make it so. Plaintiff would check whether hot tub rules were observed anytime between 10:00AM and 4:00AM at his discretion. Plaintiff decided the time and frequency with which he would walk the grounds after dark. Plaintiff had a duty to go out upon the grounds at

10 - ORDER

periodic, but unscheduled times. Defendants wanted plaintiff to go upon the grounds at different times and to vary routes and locations visited. Plaintiff did not consider his rent credit as income and for this reason did not report it to the Social Security Administration. Defendants maintained no employment records for plaintiff. Plaintiff was not required to submit and did not submit time records to defendants.

Based on the facts stated in the preceding paragraph and the undisputed facts, plaintiff was defendants' employee as a matter of law, even if the right to control the manner of a worker's performance is the most important factor, as defendants contend.[7] The undated rental application and agreement does not reflect the heart of the parties' agreement that plaintiff would receive full rent credit in exchange for services. Rather, it reflects a month to month tenancy with a total of $200 in rent credits for plaintiff's services. Although plaintiff had limited discretion as to when to perform his duties, defendants specified the duties and frequency of performance and terminated the rent-credit arrangement when they became dissatisfied with plaintiff's performance. Thereafter, defendants transferred plaintiff's duties to the full-time employees of Devonshire Hills. Plaintiff

---

[7]As noted, the court does not hold that a resident of an apartment who receives rent credit in exchange for providing services to a landlord is always in all circumstances an employee within the meaning of the FLSA and Oregon's wage and hour statutes.

11 - ORDER

could not participate in profit or loss based on his performance. Plaintiff did not provide his own equipment and defendants provided all materials. Performance of plaintiff's duties did not require extensive skill or expertise. Security and maintenance are an integral part of the provision of apartment housing for rent. Plaintiff performed the type of duties typical of an employee.

    B. Was Plaintiff and Employee Under Oregon Wage & Hour Law?

Four principal factors (none dispositive) control the determination of whether an employment relationship exists for purposes of Oregon's wage and hour statutes: the putative employer's right to control work performance; the method of payment; whether the putative employer provides materials and equipment for work; and whether the putative employer can fire the putative employee. Perri v. Certified Languages Int'l, LLC, 66 P.3d 531 (Or. App. 2003). As with the FLSA, employment status is a legal question for the court, although it may be presented to the jury with proper instructions for resolution of disputes of underlying facts. Id. at 535.

When the evidence is viewed in the light most favorable to defendants and defendants are afforded the benefit of all reasonable inferences, the evidence established that plaintiff was defendants' employee for purposes of Oregon's wage and hour statutes under the "right to control" test identified in the

12 - ORDER

Perri case.[8]  Defendants specified the work and manner of work and required that plaintiff perform security rounds at night. See Castle Homes, Inc. v. Whaite, 769 P.2d 215, 217 (Or. App. 1989) (employer found to control employee's work in part because it required plaintiff to be on its sales lot on Sundays). Defendants paid plaintiff in lieu of cash and furnished plaintiff's materials and equipment.  Security and provision of clean pool and spa areas and chemically balanced water is central to defendants' business.  According to defendants, they terminated the rent-credit arrangement when they because dissatisfied with plaintiff's performance.

    C.  Compensability of "Hours Worked" Under the FLSA

    Plaintiff contends that he worked compensable eight or nine hour security shifts that are subject to the FLSA minimum wage and overtime requirements.  The parties dispute whether plaintiff's work entailed walking the grounds a few times a night as defendants contend, or whether plaintiff worked eight or nine hour security shifts with a one hour lunch break, in which plaintiff either walked the grounds or performed janitorial or maintenance duties.  Disputed issues of fact preclude determination at the summary judgment stage of the length of

---

[8] As noted, the court does not hold that a resident of an apartment who receives rent credit in exchange for providing services to a landlord is always in all circumstances an employee within the meaning of the FLSA and Oregon's wage and hour statutes.

13 - ORDER

plaintiff's "shifts," and the terms and reasonableness of any agreement between the parties for deeming the number of hours worked in circumstances where it is difficult to keep track of such time expended.  Summary judgment is inappropriate.  <u>Brigham v. Eugene Water and Electric Board</u>, 357 F.3d 931, 935 (9th Cir. 2004).

    D.  Compensability of "Hours Worked" Under Oregon Law

Partial summary judgment is equally inappropriate regarding the compensability of hours expended by plaintiff under Oregon law.  Oregon administrative regulations are substantially similar to the federal regulations cited in the <u>Brigham</u> case.  Or. Admin. R. 832-020-0042(1), (3).

II.  <u>Defendants' Motion for Summary Judgment</u>

    A.  Plaintiff's Employment Status Under FLSA & Oregon Law

Defendants argue that the court can only conclude that plaintiff was an independent contractor, and not an employee, for purposes of plaintiff's federal and state wage and hour claims. Defendants are incorrect for the reasons discussed above.

    B.  Oregon Disability Discrimination and Retaliation Claims

Defendants argue that plaintiff produced no evidence that it treated similarly situated nondisabled employees better than plaintiff, and no evidence rebutting defendants' evidence that they legitimately terminated the rent-credit arrangement due to plaintiff's deficient work performance.  Defendants further argue

14 - ORDER

that plaintiff produced no evidence that plaintiff opposed disability discrimination or that defendants took adverse action on account of such opposition.

Plaintiff concedes that he produced no comparator evidence. He correctly argues that he is not required to produce comparator evidence to prevail on his disparate treatment disability discrimination claim. Plaintiff produced evidence that he informed David Frank and Kahoilua that he is disabled. Caudill Depo. 133:21-23, 134:22-135:2. It is undisputed that defendants terminated the rent-credit arrangement. Plaintiff produced evidence that he performed his job to defendants' satisfaction in the form of a favorable letter of recommendation by Kahoilua, generated after defendants' termination of the rent-credit arrangement. By virtue of the sequence of events, plaintiff creates a triable issue of fact regarding pretext without resort to the burden-shifting analysis. Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001).

Regarding protected opposition to alleged disability discrimination, plaintiff testified that he complained to Kahoilua for two years that defendants underpaid him because they knew he was disabled and could not compete in the open job market. Plaintiff further testified that Kahoilua suggested that plaintiff be paid a salary, and that defendants terminated his employment within 60 days of the date Kahoilua proposed to the

Franks that they pay plaintiff a salary.  As noted, plaintiff has sufficiently rebutted defendants' legitimate business purpose claim to create a triable issue of fact.  Defendants are not entitled to summary judgment on plaintiff's disparate treatment and retaliation disability discrimination claims.

    C.  Unjust Enrichment

Defendants argue that plaintiff received what he bargained for, so that his unjust enrichment claim fails as a matter of law.  The elements of unjust enrichment are conferral of benefit upon defendants by plaintiff, defendants' awareness of the benefit, and unjustness, under the circumstances, of permitting defendants to retain the benefit without payment to plaintiff. <u>Jaqua v. Nike, Inc.</u>, 865 P.2d 442, 445 (Or. App. 2001).  Citing to <u>Sulliger v. Lane County</u>, 79 P.3d 888 (Or. App. 2003), plaintiff argues that the Oregon Court of Appeals permitted an unjust enrichment claim in the employment context.  <u>Sulliger</u> is not on point.  The court held that the trial court improperly dismissed the unjust enrichment claim because it incorrectly determined that Sulliger named the wrong entity as defendant. <u>Id</u>.  Sulliger alleged unjust enrichment for the county's failure to report his status as a police officer to the Oregon Public Employees Retirement System, which enabled the county to make smaller contributions to Sulliger's retirement account that it would have made had the county properly reported Sulliger's

status.  In the case at bench, it would be just to permit defendants to keep the benefits of their arrangement with plaintiff.  Plaintiff agreed to the arrangement and plaintiff has an adequate remedy under the wage and hour laws.  Defendants are entitled to summary judgment on this claim.

    D.  Fraudulent Inducement

Plaintiff concedes defendants' motion with respect to this claim.

    E.  Reckless & Intentional Infliction of Emotional Distress

Wrongfully motivated firing is generally not actionable under a tort theory for infliction of emotional distress.  <u>Madani v. Kendall Ford, Inc.</u>, 818 P.2d 930 (Or. 1991), <u>abrogated on other grounds by</u> <u>McGanty v. Staudenraus</u>, 901 P.2d 841 (Or. 1995).  Defendants evicted plaintiff approximately nine months following termination of the rent-credit arrangement.  Plaintiff does not rebut defendants' evidence that although defendants evicted plaintiff for no cause, as is their right, they decided to do so because they received noise complaints about plaintiff and because plaintiff harbored a fugitive at his apartment.  In any event, defendants' alleged conduct of wrongfully terminating the rent-credit arrangement and evicting plaintiff is not sufficiently outrageous to sustain these tort claims.

## Conclusion

Based on the foregoing, defendants' motion for summary

17 - ORDER

judgment [#42] is granted in part and denied in part; plaintiff's motion for partial summary judgment [#48] is granted in part and denied in part; and plaintiff's motion to strike [#87] is denied. Defendants are entitled to judgment as a matter of law on plaintiff's claims for unjust enrichment, fraudulent inducement, and intentional and reckless infliction of emotional distress.

    SO ORDERED.

    DATED this  13th  day of October, 2009.

                                    s/ Michael R. Hogan
                                 United States District Judge